Our first case of the morning is in re X.F. for the appellant. You help me pronounce your last name. Varghese.  Varghese. Varghese. Okay. And Mr. Williams for the appellate. You may proceed. Good morning, your honors, and may it please the court, counsel. My name is Cheryl Varghese. I'm from the Office of the State Appellate Defender, and I represent Xavier. The Juvenile Court Act mandates that all juvenile records remain confidential and may never be disclosed unless one of the limited exceptions applies. One of those exceptions states that the circuit clerk shall report the disposition of all cases to the Secretary of State as required in Section 6-204 of the Illinois Vehicle Code. Section 6-204 of the Vehicle Reporting Statute provides that only adjudications on certain vehicle-related offenses be reported. In this case, the Champaign County Circuit Clerk generated four reports to the Secretary of State that listed Xavier's full name, his home address, his date of birth, the four charges that were brought against him, and the disposition of all four charges. The State's position is that it is proper for the circuit clerk to report the disposition of all juvenile cases to the Secretary of State regardless of if the charges were actually dismissed. But while the Juvenile Confidentiality Statute provides that the clerk shall report the disposition of all cases to the Secretary of State, there's language that modifies that language with a clause, as required in Section 6-204 of the Illinois Vehicle Code. Thus, the Confidentiality Statute explicitly refers to the reporting statute. Can I interrupt you for a second? Yes, Your Honor. Have you seen the motion to take judicial notice? Yes, Your Honor.  Because what you're saying the clerk did actually never happened. There was nothing sent. What's your position on that? Your Honor, this Court has yet to rule on that motion to take judicial notice. We would ask that this Court deny that motion. Pursuant to Illinois Rule of Evidence 201-B, a court may take judicial notice of facts that are either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resources sources whose accuracy cannot reasonably be questioned. Courts of review generally take judicial notice of public documents such as DOC website records or docket records in other court proceedings. But I could not find a single case in which the court took judicial notice of private correspondence written from the deputy circuit clerk for purposes of appeal. However, if this Court were to take... Just a quick one, Jason. You're arguing that this letter was sent from the clerk to the Secretary of State? Yes, Your Honor. It would seem that the letter was sent from the deputy circuit clerk. However, if this Court were to take judicial notice of this letter, we would argue that the public interest exception to the mootness doctrine applies in this case. The public interest exception to the mootness doctrine examines the question of is it of a substantial public nature whether there is a need for an authoritative decision to provide future guidance and whether the situation is likely to recur. In this case, as the First District noted in Inouye J.R., issues involving the care, protection, and well-being of a minor are of serious public concern and the release of a minor's juvenile records is of particular concern. Further, because there is no published decision on this issue, there is no guidance on this issue. And for all we know, this is happening across the state and no one has simply noticed. The situation is also likely to recur because, as noted in the letter from the deputy circuit clerk, these reports are automatically generated in every case, even when it is errored to do so. The circuit clerk's reporting system apparently depends on an unnamed employee hand-selecting the correct automatically generated report and emailing them to the Secretary of State. Thus, the situation is likely to recur. Further, if this Court does take judicial notice of this document, we would ask that this Court still reach this issue because the existence of these reports in the common law record itself is an issue because it allows for the possibility that in the future, an employee from the circuit clerk's office might open up this document and accidentally send this document to the Secretary of State. The deputy circuit clerk's letter specifically noted that without a court order, the deputy circuit clerk cannot take out this document from the record itself. Thus, we would ask this Court to reach this issue even if this Court finds that it should properly take judicial notice of this document. In this case, the circuit clerk erred in sending these reports because there is nothing in the Illinois Vehicle Code that allows for the circuit clerk to send reports on charges that were dismissed. Interpreting the statute more broadly to require reporting of all juvenile dispositions would render superfluous the offense-specific provisions in the Illinois Vehicle Reporting Statute. Thus, reporting the dismissals of the three charges was an error. Further, the circuit clerk erred in reporting the adjudication for aggravated robbery because that also did not qualify for reporting. First, the adjudication for aggravated robbery is not an offense that was listed within the Illinois Vehicle Code. Second, it could not have been reported as a gang-related offense that involved a vehicle because the Court never made a necessary finding that the offense was gang-related. Because a reporting statute requires a determination to be made under Section 5-710 of the Juvenile Court Act, and the Act, in turn, requires that the Court make a finding that the offense was gang-related, the determination had to be made by the trial court for purposes of this reporting requirement. But no such finding was made in this case. In fact, no mention of any gang-related activity was found in Xavier's plea hearing, his sentencing hearing, or his social investigation report. Thus, that provision that a gang-related offense involving a motor vehicle must be reported to the Secretary of State is inapplicable in this case. The consequences of this error are far-reaching and life-altering for Xavier. First, the unauthorized reports impede or prevent Xavier from obtaining a driver's license. And if, in fact, he has a license, the Secretary of State can revoke it. Further, it is possible that a release of the reports will lead to much wider dissemination of confidential information. This is because there is a conflict between the Juvenile Confidentiality Statute and the Vehicle Reporting Statute. The Vehicle Reporting Statute states that all juvenile court dispositions reported to the Secretary of State shall proceed as if the cases had been adjudicated in traffic or criminal court. The statute specifically then sets out that information reported relative to reckless homicide shall be privileged and available only to the Secretary of State, the court, and police officers. This provision suggests that information will be made available to the public for all reports other than those related to reckless homicide. The Juvenile Confidentiality Statute, on the other hand, provides that all information reported relative to the offenses shall be privileged and available only to the Secretary of State, courts, and police officers. It is this conflict between the statutes that allows for this dissemination of the information. An employee of the Secretary of State may accidentally send out this information only looking to the vehicle code to figure out which information should remain private or which information should remain public. Therefore, we ask that this court remand with directions for the trial court to vacate and or withdraw the reports of court disposition and notify the Circuit Clerk and Secretary of State that sending the reports violated the law and continued possession of any record of those reports by the Secretary of State would also violate the law. Thank you, Your Honors. May it please the Court. Counsel, my name is James Ryan Williams. On behalf of the State's Attorneys Appellate Prosecutor, it is my privilege to represent the people of the State of Illinois before this Honorable Court. This is a classic case of a solution seeking a problem. Instead of picking up the phone, calling the Champaign Circuit Clerk and inquiring about these reports and perhaps confirming that they were even actually sent, the defendant instead decides to attempt to address this issue for the first time on appeal and he does so despite numerous procedural problems. First of all, this issue has been waived. It wasn't addressed below. The court was not given the opportunity to correct the error, if any. And importantly, the court was not given the opportunity to develop the record as to any of this. The challenge to action here was taken by the Circuit Clerk, not the trial court, and it was taken after the entry of the final judgment. And for those reasons, this action, it's not a judgment itself, nor is it in any way part of the final judgment. And then importantly, there's no proof that these reports were even actually sent because they weren't. To that end, when I first reviewed this briefing, I immediately noticed nothing in this record establishes that these reports were actually sent. So in exercising my due diligence, I picked up the phone, I called the Champaign Circuit Clerk and attempted to inquire about this. Now, unfortunately, what happened was they did respond to me, I believe the next day, but they actually, instead of calling me back, they emailed me, which I wasn't expecting. It went to my spam, and I didn't discover this until I made a follow-up phone call after receiving the defendant's reply brief here. And that's when I first learned that these reports were, in fact, never actually sent. But instead, they were apparently generated pursuant to the automated system implemented by the Administrative Office of the Illinois Courts. And as an officer of the court, I felt that I had a duty to bring this information to the court's attention. And after reviewing the various case law and discussing the various options with my Deputy Director, we decided to file the motion to take judicial notice because the case law suggested that that's appropriate where events outside the record disclose that there is no controversy or no controversy continues to exist. And that seems to be exactly what happened here. Again, once I learned, called the Circuit Clerk a second time, learned that these reports were never even actually sent, it just seemed like a motion to take judicial notice was the most appropriate avenue for bringing that information to this court's attention. Now, despite offering the defendant proof that what he's so concerned about here, that is the alleged erroneous filing of these reports, despite providing him proof that that didn't actually happen, he nevertheless insists in continuing this litigation and is seemingly now arguing purely for the sake of argument. And in disputing that this issue is moved, despite the fact that the reports have not actually even ever been sent to the Secretary of State, the defendant now takes the position that the possibility exists that they could be. So, I mean, so first of all, this argument basically already was dependent on numerous contingencies. And now there's the additional contingency of the error of which they've complained actually even occurring in the first place. So for the defendant to have the complications with having his driver's license, there's quite a few things that, frankly, have to fall into place. So first of all, an employee of the Circuit Clerk has to discover these reports, even though this case is basically already concluded, notwithstanding this appeal. Then that Circuit Clerk employee has to erroneously send those to the Secretary of State, which hasn't happened. Then the Secretary of State, an employee of the Secretary of State would have to receive these reports and then commit a series of additional errors. They would have to read these reports as an adjudication for a qualifying offense, which didn't happen here. They'd have to read these reports as including a judicial determination that the license is to be suspended, which hasn't happened here. They'd have to erroneously read these reports as including, because the judge would have to suspend a license for a specific period of time, which hasn't happened here. And in any event, that's limited to the defendant's 21st birthday, and he was committed to the Department of Juvenile Justice until his 21st birthday. So there's the additional contingency of him having to actually get out early, which apparently, according to the objection to the motion, has happened here. And then in addition to all that, he has to apply for a driver's license, which nothing establishes that he has here. And if all six of those things, if the stars align against the defendant and all these contingencies fall into place, under all those circumstances, he might then experience difficulty getting his driver's license. The idea that there's a controversy here is, respectfully, is absurd. Now, with respect to the actual briefing, the state's initial position here is that this court just simply lacks jurisdiction to even consider this issue. In VARA, our Supreme Court recently explained that action taken by the circuit clerk, even if improper, cannot be addressed through the appellate process where it's not part of the final judgment. Here, this action is not part of the final judgment. Even if the circuit clerk sent these reports to the Secretary of State, which it did not, and even if the reporting was statutorily unauthorized, which frankly is unclear on this record, in any event, the action was taken after final judgment. It was taken by the circuit clerk, not the trial court. There's no court order to do this, and the defendant didn't even raise this below. So this is not a judgment, nor is it in any way part of the final judgment. And for that reason, the state's initial position, again, is that this circuit clerk action is simply not subject to direct review. Now, in the event that this court finds jurisdiction, and in the event that this court denies the motion to take judicial notice, in any event, this issue is not actually even ripe for litigation. As briefly discussed a moment ago, the state has no proof here that the reports were sent because they weren't. The state has no proof here that confidential information was disclosed to the Secretary of State or anyone else because it wasn't. The state has no proof here that a Secretary of State employee has misread these reports as including a judicial finding of a qualifying offense. Qualifying circumstances, license suspension, or license suspension for a period of time. All of these findings are necessary for the defendant's license to be suspended. He's offered no proof that any of that has happened. And frankly, he's offered no proof that he's even applied for a driver's license and had some sort of complication in getting it. So again, the idea that there's an actual controversy here is simply absurd. Now, even if there is jurisdiction, even if this is not moved, even if it's somehow ripe, in any event, it's still weight. The defendant did not object to this, nor did he raise it in a post-plea motion. And because of that, he didn't give the court a chance to correct the error, if any. And very importantly, he didn't develop the record about any of this. We don't know the purpose of these reports or the procedures involved. We have no idea why they were generated here. And as the Deputy Circuit Clerk of Champaign County explained in the letter, it was his belief that these reports are just automatically generated pursuant to the system implemented by the Administrative Office of the Illinois Courts. We have no information about any of this. And for those reasons, plus the fact that the defendant's argument here is dependent on this, like, multi-tiered statutory interpretation, there's nothing that's plain, clear, or obvious about this error. So this court, in any event, should not be reaching this as a matter of plain error. Now, can I stop you for a minute? I want to go ask a question all the way back to your introductory comments regarding your quote that this is a solution seeking a problem. And you just again alluded to whether or not the clerk had an opportunity to correct its record. So my question is this. What remedies were available to correct the record below, in your view? Because you've alluded to that twice now. Namus action? What are we talking about? Yeah. Actually, Your Honor, that's exactly what I was getting at. That here, there's no authority for the strong remedies that are allegedly required here. It would seem that the proper avenue, well, initially, the briefing I suggested that, first of all, the defendant ought to just call the circuit clerk and see. I mean, I guess, frankly, I don't see what the problem is with having these reports even in the record. That seems to be no different than the report of proceedings where the judge and the state talk about the fact that three of these have been dismissed. You know, one of the counts he pled guilty to. I mean, these reports are limited to the common law record. I mean, what the concern here is, is, frankly, very confusing to me. But to the extent that there is some particular concern, and, again, it appears that the circuit clerk's position is that they don't have the authority to remove these documents that are automatically generated pursuant to the office of Illinois, the Ministry of Office of Illinois Court System, then it would seem that the next step would be, if he's really so concerned about these being in the common law record, to file a mandamus action. But to try to address this on appeal, where this has in no way been addressed or discussed or nothing about this has had any part of this case to this point, this is a guilty plea. You know, and I guess the other thing I want to point out is, so, the defendant here has asked, basically, for, like, a three-tiered remedy. Now, among those, first of all, he requests that this court order the Secretary of State to destroy any record of these reports. Well, the reports were never actually sent. They were never actually received, so they can't destroy them. And, in any event, they offer no authority for the proposition that this court can order a constitutional officer and somebody who's not even a party to this litigation to take any action. And, additionally, they also ask for an order requiring the trial court to notify the Secretary of State that the reports were unauthorized. Well, again, they were never even sent. So, to give such a remedy would essentially create the very problem that they're so concerned about here. It would notify the Secretary of State of the existence of these reports, which is the very thing that has given rise to all of this litigation, all of this briefing, the motions, and this oral argument today. Unless the court has any further questions. Thank you, Your Honor. Your Honors, our goal is not to see if the stars have aligned against Xavier in this case. Our goal is to ensure that the stars do not align against Xavier. Once Xavier's confidentiality has been breached, it is impossible to undo the damage. It becomes a public record. And that is why this is such an important issue in this case, is that we cannot undo the damage in this case. Now, the State brings up that VARA should be extended to this case. We would ask this court not to extend VARA because VARA is distinguishable. First, under VARA, the payment status information sheet was filed about 18 months after final judgment. And thus, it was created outside of the trial court proceedings. Here, the circuit court generated these four reports of court disposition three days after sentencing and about two months before the court ended up denying Xavier's motion to reconsider sentence. So, these reports were actually created within the trial court proceedings and well before final judgment. Further, unlike VARA, these are not ministerial clerical actions on behalf of the circuit court. They're substantive. The act of reporting itself violates the juvenile's confidentiality. Further, while improperly reported fines can be easily erased and have no lasting harm, the breach of a juvenile's confidentiality is long-lasting. There's no way to undo it. Further, the State asks this court to find that the juvenile can file a mandamus action. But that is an impossible hurdle for a pro se juvenile respondent to overcome. Even though the Juvenile Court Act does say that every juvenile should be appointed counsel, we don't know. It's unclear if that actually applies to mandamus because it's a civil action. Further, a juvenile might not know that they can actually ask for appointed counsel. So, to ask a juvenile to actually do this via mandamus is unreasonable. Further, Your Honors, a juvenile is not allowed to file a post-conviction petition. So, a direct appeal is the only way a juvenile can actually get meaningful relief. In this case, to ask the juvenile to wait until he's absolutely sure his confidentiality has been breached is creating a problem that there is no answer to. Your Honor, the State also says that this issue has been waived. We would ask the Court to find that forfeiture is inapplicable in this case because Defense Counsel was not noticed upon this. There is actually no remedy in the trial court because these reports were generated two days after sentencing. There was no indication on those reports that Defense Counsel was aware of those notices. And there was no reason for Defense Counsel to go down to the Circuit Clerk's office and review the common law record. Thus, Defense Counsel did not have an opportunity to object. So, forfeiture should be inapplicable in this case. This is analogous to the public defender fee situation in People v. Hardman. There, the Supreme Court recognized that because a court is required to hold a hearing and make a specific finding before a public defender fee can be imposed, a defendant's initial failure to challenge the imposition of the fee does not result in forfeiture. Alternatively, we ask this Court to reach this under second-pronged claim error. Because as the First District and Inmate J.R. noticed, issues involving confidentiality are important. They require serious concern and thus they do implicate the judicial process. Almost 40 years ago, Justice Ryan Quest noted that the insistence on confidentiality is born of a tender concern for the welfare of the child to hide his youthful errors and bury them in the graveyard of the forgotten past. While the State is insistent that there is no error in this case, that's only on the presumption that this Court takes judicial notice of a letter from a Deputy Circuit Clerk. The record, as it stands on appeal, indicated that these reports were sent to the Secretary of State because on those reports, it said at the very bottom, mail to Secretary of State and included the address. So the State's entire argument is premised on this idea that the reports were never sent out, but this Court has yet to make a ruling on that motion. For those reasons, we ask this Court to direct the Circuit Court to inform the Circuit Clerk and the Secretary of State that these reports were sent out in violation of the confidentiality statute. I have a question. Yes, Your Honor. You only mentioned one reason why you thought Vera was distinguishable. But inherent in that approach is you're suggesting there was a judicial error in this case because that's what courts consider. Yes, Your Honor. What was the judicial error? Because if you're ascribing the Circuit Clerk's collateral decision to one, accept these generated forms, and then to do something with them, I don't disagree that's part of a process, which we could call the judicial process, but it's not something which... It's not a mistake by the judiciary. It's not a mistake by the trial court. It's a mistake by an independent elected official who has duties that go far beyond what judges have control of. Yes, Your Honor. I see my time is up. Can I quickly answer your question? Yes. It is true that Vera did deal primarily with this idea that a Circuit Clerk's imposition of fines is ministerial and that the Court actually plays no part in it. And it is true that there is a somewhat parallel to this case because the only way in which this report could have appropriately gone out is if the Court had made a factual finding. But that doesn't mean that VARA should be extended to this case. VARA dealt with... VARA's purpose was to deal with improperly recorded fines. Public defender fee cases such as Gutierrez are still out there, which allow for this Court to find that even when the Court does not make an actual finding, even if there is no Court error, that the Circuit Clerk can still improperly assess something. Also, we would ask this Court to note that VARA is still pending on rehearing. So this Court does not have to necessarily extend VARA to this case. We should just wait and then maybe your client will be 30 before VARA is ever decided finally by the Court. Yes, Your Honor. Thank you. That, however, was a strenuous comment that will strike from the record. Thank you, counsel.